UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

CIVIL ACTION NO. 05-CV-407-JBC

FREDERICK D. JONES, SR.                                                    PLAINTIFF

VS:                   **MEMORANDUM OPINION AND ORDER**

ROBERT BISHOP, ET AL.
                                                                          DEFENDANTS

Frederick D. Jones, Sr., a *pro se* plaintiff who is confined in the Lee Adjustment Center ("LAC") in Beattyville, Kentucky, has filed a *pro se* complaint, and an amended complaint under 42 U.S.C. § 1983 [Record Nos. 1 and 8]. He has also filed two "Motions to Proceed *In Forma Pauperis*" [Record Nos 2 and 5], which the court will address by separate order.

This matter is before the court for initial screening. 28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

To establish a right to relief under § 1983, the plaintiff must plead and prove two essential elements. He must show, first, that he has been deprived of rights secured by the Constitution or laws of the United States and, second, that the defendants allegedly depriving him of those rights acted under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *O'Brien v. City of Grand Rapids*, 23 F.3d 990 (6th Cir. 1994).

This is a *pro se* complaint and, as such, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v.*

*Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* complaint must be taken as true and construed in favor of the plaintiff. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). However, 28 U.S.C. §1915(e)(2) affords a court the authority to dismiss a case at any time if the court determines that the action is (i) frivolous or malicious or (ii) fails to state a claim upon which relief can be granted.

## CLAIMS

The plaintiff asserts a myriad of claims. First, the plaintiff claims that various conditions of his confinement violate the Eighth Amendment of the United States Constitution. Second, he alleges that the defendants conspired to deny his right to due process of law in connection with numerous disciplinary proceedings instituted against him. Third, he further alleges that the defendants singled him out for disciplinary sanctions on the basis of his African-American race, violating his right to equal protection of law. These two claims would arise under the Fourteenth Amendment of the United States Constitution. Fourth, he claims that prison officials violated his right of access to court, protected under the First Amendment. He claims that because he sued prison officials in Lee Circuit Court, they retaliated against him by placing him in segregation.

## RELIEF REQUESTED

The plaintiff seeks monetary damages from the defendants. He also demands injunctive relief. Specifically, he demands that his state sentence be credited with varying amounts of good time credit based upon amounts of time that he was ordered to spend in disciplinary segregation.

NAMED DEFENDANTS

The plaintiff has named the following defendants, all of whom are employees of the LAC: (1) Robert Bishop, correctional officer; (2) Nathan Mullins, Captain; (3) Roy Terry, Sergeant; (4) Mike Bowling, Adjustment Officer; (5) Randy Stovall, Warden of the LAC; (6) Tommy Wright, correctional officer; (7) Adam Rainwater, correctional officer; (8) Greg Mazurek, Sergeant; (9) Dean Turner, correctional officer; (10) Terry Fultz, Captain; and (11) Chris Couch, Sergeant.

ALLEGATIONS OF THE COMPLAINT

The plaintiff asserts numerous claims, all of which stem from his perception of alleged mistreatment and racial discrimination by prison officials.  The plaintiff was charged with a series of disciplinary infractions in 2005, for which he was sanctioned. He alleges that prison officials violated his constitutional rights each time he was charged with violating a prison regulation.[1]

1. January 23, 2005 Contraband Charge

On January 23, 2005, the plaintiff was charged with possessing dangerous contraband (an alcoholic beverage).  He claims that he was charged with the contraband offense because he is black.  He asserts that his cell-mate, who was white, was not charged, even though the contraband was found behind his cell-mate's

---

[1] Because the plaintiff did not list in chronological order the actions about which he complains, and because the plaintiff often jumped from one event to another, it was difficult to ascertain the exact sequence of events.

locker box. Although a hearing officer initially determined that further investigation into the charge was necessary, the plaintiff was ultimately convicted of the infraction on February 8, 2005, and was sentenced to serve 45 days in segregation. Warden Stovall affirmed the plaintiff's conviction, stating that no due process violation had occurred.

The plaintiff alleges that his right to due process of law was violated during his hearing. Specifically, he claims that the charging and investigating officers (Defendants Mullins and Mazurek) and Adjustment Officer Bowling (who presided over his hearing) all conspired against him to deny him a fair hearing. The plaintiff's claims arise under the Fourteenth Amendment of the United States Constitution, which guarantees equal protection and due process of law.

### 2. Conditions of Confinement Claim and Retaliation Claim

The plaintiff claims that while serving his 45-day sentence in segregation, he was unable to sleep and began suffering from depression. He claims that while in segregation, he was denied proper medical care in violation of the Eighth Amendment of the United States Constitution. The plaintiff further states that during this interval, he filed suit in the Lee Circuit Court, challenging the outcome of his February 8, 2005, disciplinary hearing. He claims that as a result of his filing the Lee Circuit action, LAC officials retaliated against him by again placing him in segregation.

### 3. April 5, 2005, Charge

Plaintiff refers to an event which occurred on April 5, 2005, in which he was charged with possessing some books which were not supposed to be in his cell. By this time the plaintiff had a new cell-mate, who was also black. He claims that on April 5, 2005, his cell-mate and he were *both* charged with the offense because of their race, unlike the January, 2005 event in which his white cell-mate had not been charged. The April 5, 2005, charge was eventually dismissed.

### 4. May 9, 2005, Charge

Plaintiff next alleges that on May 9, 2005, he was charged with "being in another inmate {sic} doorway." He was ordered to perform 40 hours of extra duty work.[2] He complains that this sanction violated his due process rights and was a product of racial discrimination.

### 5. July 6, 2005, Charge

The plaintiff was next charged on July 6, 2005, with failing to perform 40 hours of extra duty work. He complains that Defendant Mazurek, who worked first shift, charged him with the offense, but that he (plaintiff) performed the extra work on second shift. The plaintiff contends that another officer, "Patrick," was aware that he had performed his extra duty.

The hearing officer (Defendant Fultz) found the plaintiff guilty of neglecting his extra duties and told the plaintiff that it was his responsibility to ensure that an

---

2 The plaintiff also mentions being sanctioned with 40 hours of extra duty work in connection with participating in a non-violent demonstration [Supplement to Complaint, Record No. 1, ¶ 8]. It is unclear whether this charge was the same as, or related to, the May 9, 2005 charge.

authorized official recorded his extra-duty services. The plaintiff does not state that he received any specific punishment for the offense, stating only that it caused him to have yet another "disciplinary" lodged in his file. The plaintiff again alleges that as a result of this action, prison officials conspired against him; denied him due process of law; and racially discriminated against him.

### 6. Denial of Prison Job

The final event about which the plaintiff complains was the denial of his old job in the prison kitchen. He states that James Dooley, the kitchen supervisor, told him (plaintiff) that he (Dooley) had been instructed not to re-hire the plaintiff. Plaintiff claims that the denial of his old job was yet another example of being the victim of racial discrimination and of being charged with disciplinary infractions which he claims he did not commit.

### DISCUSSION
### 1. First and Eighth Amendment Claims

Regarding the plaintiff's claim that the conditions of his confinement in segregation violated the Eighth Amendment, and his claim that prison officials retaliated against him in violation of his First Amendment right of access to the courts, the plaintiff failed to establish that he administratively exhausted these claims according to the provisions of the applicable regulations.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires state and federal prisoners bringing actions concerning prison conditions, and any other incident to prison life, to exhaust all available administrative remedies before suing in

federal court. *See Porter v. Nussle*, 534 U.S. 122 S. Ct. 983 (2002); *Lavista v. Beeler*, 195 F,3d 254, 256 (6th Cir. 1999).  Under federal law, it is insufficient for a prisoner to merely claim that grievances were not answered satisfactorily or to begin the grievance process and not finish it.  Prisoners may not short-circuit the exhaustion requirement by alleging the futility of going further, and then ask the courts to rule they have done enough.  *See Fisher v. Wickstrom*, 230 F.3d 1358, 2000 WL 1477232 (6th Cir. Sept. 25, 2000).  The Kentucky Department of Corrections ("KDOC") has promulgated a set of administrative regulations at 501 KAR 6:010, which govern prison grievance procedures.  The plaintiff was required to have complied with these procedures.  They are referred to as "Corrections Policies and Procedures" ("CPP") .  The CPP which addresses inmate grievances is found in § I (1) of Policy Number 14.6, "the *Inmate Grievance Process*."  This provision states that a prisoner in a state correctional institution must informally attempt to grieve a claim with the Grievance Aide, the Grievance Coordinator, the department head, or institutional staff.

If the attempt at informal resolution fails, he must seek a hearing before the Grievance Committee [*Id.*, § (2)]. The Committee's decision must be forwarded to the warden, who is responsible for making a final written decision [*Id.*, §2(c)-(d)].  A prisoner who is not satisfied with the warden's final decision may appeal that decision to the Commissioner of Corrections by using a specific form described in § 3(a) of the *Inmate Grievance Process*.

For any issue a prisoner intends to raise, he must explain or demonstrate his attempts at exhaustion before he can be considered to have substantially complied with the law. *See Wyatt v. Leonard*, 193 F.3d 876 (6th Cir. 1999). In *Wyatt*, the court concluded that the plaintiff had adequately shown that he had attempted to comply with administrative remedies, because he had attached numerous letters he had filed and other persuasive documents.

In contrast, the instant plaintiff has offered nothing to indicate that he followed the various steps set forth in CPP Policy Number 14.6 with regard to either of these claims. For that reason, these claims have not been exhausted and must be dismissed without prejudice.

2. <u>Fourteenth Amendment Claims</u>

Plaintiff alleges that officials violated his Fourteenth Amendment rights by denying him due process of law and equal protection of the law. According to CPP 14.6 (VI) (B) (4), disciplinary decisions of Adjustment Officers are not grievable. The plaintiff's Fourteenth Amendment allegations, however, fail to state a claim upon which relief can be granted and must be dismissed.

First, while the plaintiff challenges the sufficiency of the evidence and charges leveled against him, there need only be "some evidence" to support a prison disciplinary conviction. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455-56 (1985). This standard is satisfied where "there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id*. Federal courts

do not assess credibility or weigh the evidence when reviewing a disciplinary conviction and /or adjustment officer's resolution of factual disputes. *Id.* at 455. The plaintiff's own allegations substantiate that there was "some" evidence upon which to base the convictions and sanctions imposed, although he disputed the credibility of the evidence.

Second, the plaintiff has complained of nothing more severe than being sentenced to serve 45 days in segregation. He does not allege that his various disciplinary infractions caused him to lose any good-time credits, in which he had a constitutionally protected liberty interest. For a prisoner, a deprivation of a legally cognizable liberty interest occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293 (1995).

In *Sandin*, a state prisoner challenged his 30-day sentence to segregation after the prison adjustment committee followed a prison regulation in determining Sandin's guilt. The question was whether the regulation created a liberty interest which would have entitled him to substantial due process procedures established in *Wolff v. McDonnell*, 418 U.S. 539, 564-71 (1974).

The Supreme Court determined that neither the Due Process Clause nor the Hawaii prison regulation at issue presented a liberty interest such as to trigger due process procedural protections set forth in *Wolff*. The Court stated that " . . . Conner's discipline in segregated confinement did not represent the type of atypical,

9

significant deprivation in which a state might conceivably create a liberty interest . . . ." *Id.* at 483-84. *Sandin* focused not on the content of the regulations, but on the "nature of the deprivation" visited upon the inmate. *Id*. at 481.

The sanctions about which the plaintiff complains consisted of: (1) a 45-day sentence in segregation; (2) the assignment to 40 hours of extra-duty work; and (3) the mere existence in his prison record of a write-up concerning an infraction. Simply put, none of the sanctions imposed against the instant plaintiff rise to the level of a constitutional violation. *See Sandin v. Conner*, 515 U.S. at 484-86; *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir.1997); *Wilson v. Wellman*, 238 F.3d 426, 2000 WL 1829265, **3 (6th Cir.(Mich.) December 6, 2000) (Unpublished Disposition (Since the plaintiff did not suffer the loss of good-time credits or any other action affecting the duration of his sentence, he had no due process claim because his punishment, including disciplinary segregation, did not impose an atypical and significant hardship in relation to the ordinary incidents of prison life); *Ford v. Harvey*, 106 Fed. Appx. 397 (Not selected for publication in the Federal Reporter) (August 6, 2004) (State prisoner's placement in disciplinary confinement did not implicate a liberty interest entitled to due process protection, where it was neither accompanied by loss of good time credits nor lasted for a significant period of time causing an unusual hardship on prisoner). This claim will be dismissed with prejudice. 28 U.S.C. § 1915(e)(2)(ii).

### 3. Denial of Prison Job

To the extent the plaintiff complains about the loss of property interest (his

kitchen job), the plaintiff states no claim upon which relief can be granted.  The loss of a prison job does not constitute a deprivation of a liberty interest, because it is not an atypical and significant hardship in relation to the ordinary incidents of prison life. *See Sandin v. Conner*, 515 U.S. at  484.

Prisoners have no constitutionally protected liberty interest in prison employment or a particular prison job.  *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir.1989); *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir.1991) (As the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates); *Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 49 (5th Cir.1995) (holding that a prisoner's loss of job assignment is not a protected liberty interest because it does not impose an atypical and significant hardship on him in relation to the ordinary incidents of prison life).  This claim will be dismissed with prejudice.  28 U.S.C. § 1915(e)(2)(ii).

CONCLUSION

Accordingly,  **IT IS ORDERED** as follows:

(1)  The plaintiff's First Amendment retaliation claim and Eighth Amendment denial of medical treatment claims are **DISMISSED WITHOUT PREJUDICE**.

(2) The plaintiff's Fourteenth Amendment claims, relating to the alleged denial of due process of law and equal protection of the law, are **DISMISSED WITH PREJUDICE**.

(3) The plaintiff's "Motion for Extension of Time to File Proper Forms" [Record

11

No. 7] is **DENIED** as **MOOT**.

(4)  Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the defendants.


Signed on February 2, 2006


*Jennifer B. Coffman*
JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

12